COURT OF APPEALS
DECISION
DATED AND FILED

August 13, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP2166**

**STATE OF WISCONSIN**

Cir. Ct. No. 2025CV542

**IN COURT OF APPEALS
DISTRICT IV**

---

SCOTT H. MEYER, MD,

    PETITIONER-APPELLANT,

V.

STATE OF WISCONSIN MEDICAL EXAMINING BOARD,

    RESPONDENT-RESPONDENT.

---

APPEAL from an order of the circuit court for Dane County: NIA E. TRAMMELL, Judge. *Affirmed*.

Before Graham, P.J., Blanchard, and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dr. Scott Meyer filed a WIS. STAT. ch. 227 petition in the circuit court for administrative review of a decision of the Medical

Examining Board (the Board), which is a part of the Wisconsin Department of Safety and Professional Services (the department). Meyer challenges disciplinary measures that the Board imposed on him based on findings of unprofessional conduct. With only a modification to the sanction recommended, the Board followed a decision by an administrative law judge (ALJ) who took evidence and heard argument from the parties. Meyer makes numerous arguments challenging decisions made by the ALJ, the Board, and the circuit court. We reject each of these arguments, and accordingly we affirm.

**BACKGROUND**

¶2 Scott Meyer is a physician who has been licensed by the Board to practice medicine in Wisconsin since 2016.

¶3 In January 2018, Meyer was served with a harassment restraining order issued by a trial-level court of general jurisdiction in Minnesota, called the district court. In February 2018, Meyer was issued a citation for allegedly violating the restraining order, which is a misdemeanor offense. *See* MINN. STAT. § 609.748.6(b) (stating that a respondent's violation of a restraining order that respondent is aware of is a misdemeanor offense). Meyer entered a plea of not guilty in the Minnesota district court.

¶4 While this criminal charge remained pending in Minnesota, Meyer submitted a form to Wisconsin professional licensing authorities. Specifically, in September 2019, Meyer submitted a form application to the department, seeking to renew his license to practice medicine in Wisconsin (the 2019 renewal

application).[1]  The form included the question, "Since your last renewal … do you have any pending charges …?"  Meyer answered this question, "No."  It is strongly implied in the record, and not disputed on appeal, that the department granted Meyer's 2019 renewal application.

¶5      Following a jury trial in Minnesota on October 15, 2019, Meyer was found guilty of the charged restraining order violation, resulting in the entry of a judgment of conviction against him on the same day.

¶6      One statutory requirement in Wisconsin for credentialed physicians is that, when they are convicted of a misdemeanor offense, they must notify the department of that conviction by mail within 48 hours after entry of the conviction.  WIS. STAT. § 440.03(13)(am) ("A person holding a credential [including medical licenses issued under WIS. STAT. ch. 480] who is convicted of a felony or misdemeanor anywhere shall send a notice of the conviction by 1st class mail to the department within 48 hours after the entry of the judgment of conviction.").[2]  There is a corresponding Wisconsin administrative code provision, which defines as "unprofessional conduct" the failure of such a person to provide such notice to the department on the same time line.  WIS. ADMIN. CODE

---

[1] *See* WIS. ADMIN. CODE § Med 14.03 (Sept. 2023) (requiring each medical license holder to "register biennially with the board" in part by completing an application form and returning it to the department of safety and professional services); *see also* WIS. STAT. § 448.07(1)(a) (2023-24).

All references to the Wisconsin Administrative Code are to the code as it exists as of the September 2023 register.  All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

[2] There is no dispute in this appeal that the Minnesota misdemeanor here counts as a "misdemeanor anywhere" for purposes of pertinent Wisconsin statutory and regulatory provisions.

§ Med 10.03(3)(h). Meyer did not report the conviction to the department within 48 hours after the entry of the judgment.

¶7     In addition, WIS. ADMIN. CODE § Med 10.03(3)(h) states that it is "unprofessional conduct" for a physician in this situation to fail to provide the Board with certified copies of the criminal complaint and judgment of conviction within 30 days of entry of the conviction. Meyer did not provide a certified copy of the complaint or judgment of conviction to the Board within 30 days of the conviction.

¶8     In December 2022, Meyer again applied to the department to renew his license to practice medicine in Wisconsin. On this application, he acknowledged the existence of the restraining order charge and resulting conviction against him. Specifically, Meyer answered "Yes" in response to the question on the application form inquiring whether he had convictions or charges pending against him since his last renewal. This was the first that the department learned of the Minnesota charge or the conviction.

¶9     The department filed a complaint against Meyer alleging that he had engaged in unprofessional conduct. The department took the position that Meyer engaged in unprofessional conduct by answering "No" to the question regarding pending charges on the 2019 license renewal application form. The department argued that this violated WIS. ADMIN. CODE § Med 10.03(1)(b) (defining as "unprofessional conduct" "[k]nowingly engaging in fraud or misrepresentation or dishonesty … in connection with applying for … periodic renewal of a medical license"). The department further took the position that Meyer violated WIS. STAT. § 440.03(13)(am) and § Med 10.03(3)(h) by failing to timely report his charge and conviction.

¶10 Meyer filed an answer to the department's complaint admitting that he failed to report the then-pending charge on the 2019 renewal application, but he denied that he did so knowingly. Meyer also admitted to failing to timely notify the department and the Board of the charge and conviction, but alleged that his failures were unintentional.

¶11 The Wisconsin discipline case was referred to an ALJ in the Division of Hearings and Appeals.

¶12 The department moved the ALJ for summary judgment. After the parties submitted written briefing, the ALJ granted the department's motion for summary judgment regarding Meyer's liability for unprofessional conduct, determining that there was no genuine dispute of material fact that Meyer had engaged in both forms of the alleged unprofessional conduct. This finding of guilt on the liability issues on both allegations left open the issue of the proper discipline and whether to order that Meyer pay certain costs.

¶13 After an evidentiary hearing on the topics of discipline and costs, the ALJ issued a proposed decision recommending that the Board issue an administrative warning to Meyer. *See* WIS. STAT. § 448.02(8)(a)-(d) (discussing the ability of the Board to issue administrative warnings and the nature of such warnings).

¶14 The department objected to the ALJ's recommendation of an administrative warning. *See* WIS. STAT. § 227.46(2) ("Each party adversely affected by the proposed decision [of the hearing examiner designated by the agency] shall be given an opportunity to file objections to the proposed decision …."). The department argued to the Board that under the circumstances, the Board's only option is to impose more severe discipline.

¶15     The Board adopted the ALJ's recommended decision, except that it varied the level of discipline imposed, based on the department's argument that the Board could not impose an administrative warning.  We explain in discussion below the department's rationale on this point as adopted by the Board.  Based in part on this rationale, the Board ordered that Meyer: receive a public reprimand; participate in four hours of education; and pay costs recoverable under pertinent regulations.

¶16     Meyer filed a petition with the circuit court under WIS. STAT. ch. 227, requesting that the court: issue a judgment vacating the Board's decision regarding the appropriate sanction; and adopt the ALJ's recommended decision without variation, including the recommended sanction.  After the parties submitted briefs, the circuit court issued a written order affirming the Board's decision in its entirety.

¶17     Meyer appeals.

## DISCUSSION

¶18     Meyer challenges the decision, made by the ALJ and adopted by the Board, granting summary judgment to the department.  Meyer also challenges the decision of the Board to impose discipline on numerous grounds, including that the Board erroneously interpreted statutes relating to the Board's power to impose various levels of discipline.[3]  Meyer also contends that the circuit court committed

---

[3] As part of our treatment of Meyer's argument regarding the Board's interpretation of pertinent statutes, we address thinly developed arguments that Meyer makes as part of another section of his brief that involves the constitutionality of the Board's interpretation, because they appear to be related to the statutory interpretation topic.

(continued)

reversible error by mistakenly referring to his Minnesota conviction as a felony at one point in the court's decision affirming the Board. We address these arguments in turn, after summarizing pertinent standards of review.

¶19    Judicial review of the Board's decision is governed by WIS. STAT. ch. 227. *See* WIS. STAT. § 448.09(2). In an appeal of a circuit court affirming a decision of the Board, we review the Board's decision, not the court's decision. ***Gordon v. Medical Examining Bd.***, 225 Wis. 2d 552, 556, 593 N.W.2d 481 (Ct. App. 1999).

¶20    Statutory interpretation presents issues of law that we review de novo, without deference to the Board's interpretation. *See* WIS. STAT. § 227.57(11); ***Kohler Co. v. DNR***, 2024 WI App 2, ¶17, 410 Wis. 2d 433, 3 N.W.3d 172.

¶21    We will uphold discretionary decisions of the Board "if there is a reasonable basis" for the decisions. ***Bar-Av v. Psychology Examining Bd.***, 2007 WI App 21, ¶40, 299 Wis. 2d 387, 728 N.W.2d 722. "'A proper exercise of discretion must be based on facts appearing in the record and on the appropriate and applicable law.'" ***Id.*** (quoted source omitted). In determining whether the Board sufficiently demonstrated that it reasonably exercised its discretion, "[i]t is sufficient if the findings of fact and conclusions of law are specific enough to

---

On a more general note, we emphasize that we attempt to address Meyer's arguments on appeal as best we understand them, but some are difficult for us to discern. To the extent that we do not explicitly address some references in his briefing that he intends to be an argument or part of an argument, it is because the references are not sufficiently developed. *See* ***State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (arguments "supported by only general statements" and not "developed themes reflecting any legal reasoning" may be disregarded by court of appeal).

inform the parties and the courts on appeal of the basis of the decision.'" ***Daniels v. Chiropractic Examining Bd.***, 2008 WI App 59, ¶6, 309 Wis. 2d 485, 750 N.W.2d 951.

## I. ALJ Rulings on Intent

¶22     Meyer argues that the ALJ's recommended summary judgment decision—as later adopted by the Board, concluding that there is no genuine issue of material fact that he committed unprofessional conduct—was inconsistent with the ALJ's later recommendation to the Board that the Board impose the relatively low level of discipline of an administrative warning. In making this argument, Meyer asserts that the ALJ made inconsistent findings about his credibility. In addressing this argument, we assume without deciding that, to the extent that the Board adopted the ALJ's recommended decision, an error by the ALJ of the type that Meyer asserts could require reversal of the Board's decision. With that assumption, we reject Meyer's argument because, as we now explain, he fails to support the premise that the ALJ made inconsistent findings.

¶23     Meyer does not clearly identify allegedly inconsistent credibility findings. As best we can tell, his argument is that the following two conclusions or statements of the ALJ are inconsistent with each other.

¶24     The first conclusion or statement occurred when the ALJ granted summary judgment on the issue of whether Meyer committed unprofessional conduct. The ALJ ruled that there is no genuine dispute that Meyer incorrectly completed the renewal application, because Meyer admitted to having intentionally answered "No" to the unambiguous question whether there were any charges pending against him, even though there were charges then pending against him.

¶25    The second conclusion or statement occurred when the ALJ made its recommendation to the Board on discipline. The ALJ considered Meyer to be sincere when he testified about how he planned to conduct himself in the future regarding professional reporting requirements.

¶26    We do not detect the slightest inconsistency between the two conclusions or statements. The ALJ certainly did not have to find that Meyer's testimony was wholly accurate or sincere, as opposed to being wholly inaccurate or insincere.

¶27    In a section of Meyer's brief addressing a different issue, he asserts that the ALJ made an additional finding on the topic of credibility, but this assertion is also unsupported. Specifically, Meyer contends that the ALJ also found him credible in alleging that he completed the 2019 renewal application incorrectly only because he misunderstood the question. But the ALJ found no such thing. Instead, the record reflects that the ALJ merely characterized Meyer's allegation that he mistakenly understood the 2019 renewal application to ask about only those charges that were related to the practice of medicine. It is clear from the ALJ's discussion, and the fact of its summary judgment ruling, that the ALJ was merely characterizing Meyer's argument, *without* making a finding of credibility on that topic.

¶28    Meyer also appears to more generally challenge summary judgment on the purported ground that some aspects of evidence bearing on his intent to engage in the allegedly unprofessional conduct were disputed. But this assertion consists entirely of unclear and general statements, and we reject it based on a lack of development. *See **State v. Pettit***, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992) (court of appeals generally rejects arguments based only on general

9

statements or unsupported by legal authority). In order to address this argument, we would need to construct it for Meyer. This would involve identifying which intent-related factual disputes he might be arguing were evident in the record, how they might have been related to the charged instances of unprofessional conduct, and how the ALJ's reasoning on summary judgment did or did not address those topics. Although this court liberally construes the submissions of pro se parties, we cannot do so in a way that abandons our neutrality in order to develop an argument for a party. *See State ex rel. Wren v. Richardson*, 2019 WI 110, ¶25 & n.17, 389 Wis. 2d 516, 936 N.W.2d 587 (appellate courts construe pro se briefs liberally, "to make the most intelligible argument [the courts] can discern," but the courts "do not impute to pro se litigants the best argument they could have, but did not, make"); *Town of Wilson v. City of Sheboygan*, 2020 WI 16, ¶24 n.15, 390 Wis. 2d 266, 938 N.W.2d 493 (citing *Industrial Risk Insurers v. American Eng'g Testing, Inc.*, 2009 WI App 62, ¶25, 318 Wis. 2d 148, 769 N.W.2d 82 ("We will not abandon our neutrality to develop arguments." (alteration marks omitted))).

## II. Alleged Errors of the Board

### A. Purported Rejection of ALJ Credibility Findings

¶29 Meyer argues that the Board erred by rejecting findings made by the ALJ regarding his credibility without sufficiently explaining why it rejected these findings. *See* WIS. STAT. § 227.46(2) ("If an agency's decision varies in any respect from the decision of the hearing examiner, the agency's decision shall include an explanation of the basis for each variance."). But, again, he does not clearly identify the findings at issue. And, Meyer's argument is all the more puzzling in light of the fact that the Board stated in its decision that it would depart from the ALJ's recommendations exclusively on the topics of discipline and costs,

making no variation from the ALJ regarding any finding of fact. Meyer asserts that the ALJ found him credible in testifying that he misunderstood the renewal application, but as we have explained, he provides no support for this assertion. Accordingly, we reject this argument for at least the reason that Meyer fails to identify support in the record for his premise that the Board rejected credibility determinations made by the ALJ. *See **Pettit***, 171 Wis. 2d at 646 (rejecting argument based in part on failure to support argument with facts in the record).

### B. Purported Evidentiary Ruling

¶30 Meyer argues that the Board relied on evidence that he asserts was excluded by the ALJ regarding the nature of the allegations against him in the Minnesota criminal restraining order prosecution. Meyer does not direct us to any support in the record for the proposition that the ALJ made a ruling excluding any such evidence. On this point, he cites only the respective briefing that he and the department submitted to the Board. Moreover, Meyer does not attempt to explain his assertion that the Board relied on the evidence that he contends the ALJ excluded. Nowhere in his discussion of this issue does he identify or analyze any relevant statement by the Board. Accordingly, we reject this argument as unsupported. *See **Pettit***, 171 Wis. 2d at 646.

### C. Statutory Interpretation

¶31 Meyer asserts that the Board misinterpreted pertinent statutes to determine that the relatively lesser discipline of issuing an administrative warning is not available in this case. This involves Meyer's contention that the Board improperly adopted a categorical rule that it cannot impose administrative warnings after the department has, as Meyer puts it, expended "prosecutorial

11

resources" in a given disciplinary matter. We provide additional context on this issue before explaining that we reject Meyer's argument as undeveloped.

¶32 Under WIS. STAT. § 448.02(3)(a), the Board is charged with investigating allegations of unprofessional conduct. When the Board finds, following an investigation, "that there is probable cause to believe that [a medical license holder] is guilty of unprofessional conduct …, the board shall hold a hearing on such conduct." § 448.02(3)(b). If, after holding such a hearing, the Board finds that a person who holds a medical license issued by the Board is guilty of unprofessional conduct, the Board may "warn or reprimand" the license holder, or the Board may "limit, suspend[,] or revoke" the license. § 448.02(3)(c). The effect of the Board deciding to "limit" a medical license as a sanction is that the license holder is permitted to continue practicing medicine in Wisconsin, but the license holder becomes subject to conditions that include some combination of "additional training, education[,] or supervision," as required by the Board. *See* § 448.02(3)(e). This is what the Board here ordered for Meyer.

¶33 As clearly signaled through use of the word "may" in WIS. STAT. § 448.02(3)(c), the Board's choice of discipline from among the available options is a discretionary decision. *See Verhaagh v. LIRC*, 204 Wis. 2d 154, 160, 554 N.W.2d 678 (Ct. App. 1996) (considering use of the term "may" in a statute as clear signal that an issue is submitted to the discretion of the pertinent agency).[4]

---

[4] We note that the use of the word "may" in a statute creates a rebuttable presumption that a statute is permissive, while "may" can be construed as mandatory if it is necessary to reflect legislative intent. *John J. McGuire Marital Tr. v. McGuire*, 2003 WI App 44, ¶26, 260 Wis. 2d 815, 660 N.W.2d 308. After the Board makes this point in its brief on appeal, Meyer does not argue that any use of the word "may" in pertinent provisions of WIS. STAT. § 448.02(3)(c) was not permissive in the sense that the Board was given discretion by the legislature over the choice of appropriate discipline following a finding of guilt for unprofessional conduct.

¶34   The Board has alternatives to these relatively more formal proceedings and more formal discipline under WIS. STAT. § 448.02(3)(b) and (c) following an investigation by the Board under § 448.02(3)(a).   At that point, the Board may decide to "issue an administrative warning."   *See* § 448.02(8)(a).   An administrative warning is a lesser sanction.   It "does not constitute an adjudication of guilt or the imposition of discipline and may not be used as evidence that the holder of a license or certificate is guilty of misconduct."   *See* § 448.02(8)(b); *see also* § 448.02(8)(d) (the fact that the Board issued an administrative warning is a matter of public record, but the warning's "contents … shall be private and confidential").

¶35   But the Board can take the less punitive path of the administrative warning "only if the board determines that no further action is warranted" because both of two conditions are met.   First, the matter involves minor misconduct.   WIS. STAT. § 448.02(8)(a).   Second, an administrative warning "adequately protects the public" by placing the medical license holder "on notice that any subsequent misconduct may result in disciplinary action."   § 448.02(8)(a).

¶36   With this background in mind, we turn to Meyer's argument that the Board adopted an improper categorical rule regarding levels of discipline based on the expenditure of "prosecutorial resources."   The argument appears to challenge the Board's interpretation of what constitutes a "further action" under WIS. STAT. § 448.02(8)(a) that prevents the Board from imposing an administrative warning on him in this case.   The Board reasoned that, by the time the ALJ made its decision recommending an administrative warning, the Board had already determined that "further action [against Meyer] is warranted."   Specifically, the Board had already decided to permit the department to file a formal complaint against Meyer, which was based on a finding by the Board that there was probable

13

cause to believe that Meyer was guilty of unprofessional conduct. *See* § 448.02(3)(b).[5] From this point forward, the matter proceeded as described in the background above, culminating in the Board's determination of guilt of unprofessional conduct, consistent with § 448.02(3)(c). Proceeding to a final determination of guilt in this manner, as the Board did in this case, cannot occur consistently with the issuance of an administrative warning because, as noted, § 448.02(8)(b) provides that an administrative warning is *not* an "adjudication of guilt or the imposition of discipline."

---

[5] We now address a collateral issue involving the nature of the record on appeal. Meyer does not argue that the Board's reasoning that it had taken "further action" for purposes of WIS. STAT. § 448.02(8)(a) is not supported by substantial evidence, even though, as the Board acknowledges, at least one of those actions is not directly reflected in the record. *See* WIS. STAT. § 227.57(6) (reviewing court "shall … set aside agency action or remand the case to the agency if it finds that the agency's action depends on any finding of fact that is not supported by substantial evidence in the record"); *Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶25, 293 Wis. 2d 1, 717 N.W.2d 166 (under highly deferential substantial evidence rule, the agency's decision "'may be set aside by a reviewing court only when, upon an examination of the entire record, the evidence, including the inferences therefrom, is such that a reasonable person, acting reasonably, could not have reached the decision from the evidence and its inferences'" (quoted source omitted)).

Explaining further, the Board acknowledges that its determination of probable cause regarding Meyer is not directly reflected in any part of the administrative record that has come up in the record in this appeal. But the Board argues that this court can and should take notice of the minutes of a public meeting of the Board in July 2023, which reflect that the Board made the probable cause determination at that meeting. *See Questions, Inc. v. City of Milwaukee*, 2011 WI App 126, ¶9 n.3, 336 Wis. 2d 654, 807 N.W.2d 131 (taking judicial notice of municipal meeting minutes under WIS. STAT. § 902.01). If considered by this court, the meeting minutes tend to show that the probable cause determination took place before the department filed its complaint against Meyer, in August 2023. Thus, if credited, the meeting minutes support the reasoning of the Board in its final decision that it had already determined that "further action" was necessary regarding Meyer's alleged conduct before the ALJ made its recommendation on appropriate discipline.

In his reply brief on appeal, Meyer does not refer to this topic. Therefore, we deem him to concede that the publicly available minutes provide a valid and sufficient basis for this court to conclude that the Board made a determination of probable cause in July 2023. *United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure of reply brief to address point in response brief may be treated as a concession).

¶37 On the issue of its choice of sanctions, the Board on appeal presents an argument in support of its interpretation of pertinent provisions of WIS. STAT. § 448.02, with appropriate citations to an analysis of the text of those statutes. Meyer's arguments to the contrary mainly consist of mere unsupported assertions that the Board's interpretation is incorrect. Further, he does not provide substantiative references to pertinent statutory text. Consistent with Meyer's argument that the Board based its discipline choice on the fact that "prosecutorial resources" had been expended, he points out that the disciplinary options available to the Board under § 448.02(3)(c) do not reference whether or not department staff devoted time to the case. However, this point mischaracterizes the Board's reasoning. To repeat, the Board was primarily concerned with the text of provisions in *subsection (8)* of § 448.02, which make no reference to the expenditure of department resources. Instead, as we have explained, those provisions focus on whether "further action" is needed in a given discipline matter based on whether the alleged unprofessional conduct is minor in nature and whether an administrative warning sufficiently protects the public. Meyer does not address whether the Board correctly applied any statutory language to the facts here.

¶38 Meyer makes confusing references to what he refers to as "internal" or "secret[]" decisions by the department or Board regarding how much staff time should be devoted to a discipline case such as this one, or how much was in fact devoted to this case. Much is unclear about his argument. But whatever his target might be, we reject the argument because he fails to support his apparent premise that the Board's analysis was not based on its straightforward conclusion that its finding of probable cause and the decision to pursue a hearing under WIS. STAT. § 448.02(3)(b) and (c) were both "further action[s]" for purposes of

15

§ 448.02(8)(a). One premise of Meyer's argument is fair as far as it goes: it seems obvious that the Board's decisions to make a finding of probable cause and to pursue a hearing caused the staff at both the department and the Board to devote time to the case, at least to some degree. But assuming that to be true, Meyer fails to show that the Board improperly relied on this fact in making its challenged decisions.

¶39 Meyer also fails to support his assertion that the Board's interpretation of WIS. STAT. § 448.02(8)(a) will lead, in other cases, to arbitrary enforcement against medical professionals based on a lack of clear legal standards regarding when to issue administrative warnings. As noted above, § 448.02(8)(a) requires that the Board, in order to issue an administrative warning, must decide that it will not take "further action" based on considerations that are specified by the statute—namely, whether the as-of-yet unproven misconduct is "minor" and whether an administrative warning "adequately protects the public." Meyer disagrees with the Board's decision here to proceed under § 448.02(3)(b)-(c) in light of these considerations. But he fails to show that the Board's interpretation of § 448.02(8)(a) is so vague or lacking in standards that it cannot be consistently applied across cases.

¶40 Meyer also argues that the Board's interpretation and application of WIS. STAT. § 448.02 here "chills voluntary disclosure" of "minor oversights" by persons who may be subjected to disciplinary proceedings. As part of this argument, he contends that the legislative purpose behind giving the Board the option of merely issuing administrative warnings is to efficiently address "minor" conduct without creating the stigma of public discipline. Assuming without deciding that this accurately captures at least one legislative purpose behind § 448.02(8) in particular, it remains that the legislature has chosen to limit the

availability of administrative warnings to cases in which *the Board* "determines that no further action is warranted," at least in part because the alleged misconduct is minor. *See* § 448.02(8)(a). Here, as the Board explained in its final decision, it did not view the allegations of unprofessional conduct against Meyer to be "minor," even taking into account his eventual self-reporting of the charge and conviction. Meyer fails to show a basis for this court to reject any aspect of the Board's reasoning.

### D. Due Process

¶41 In another argument that is difficult for us to track, Meyer asserts that the Board and the department played procedural roles in this case that were fundamentally unfair, violating his constitutional right to due process. Meyer acknowledges that the U.S. Supreme Court has explained that administrative review procedures are not inherently unfair for due process purposes when those procedures combine within a single agency the roles of both investigation and adjudication. *See **Withrow v. Larkin***, 421 U.S. 35, 38-41, 47-52 (1975) (addressing constitutional arguments concerning Wisconsin Medical Board's involvement in investigating and adjudicating allegations of unprofessional conduct). However, as Meyer further notes, the Court in *Withrow* explained that the existence of "actual bias or prejudgment" by an administrative adjudicator violates due process. *See **id.*** at 46-47, 54-55 (determining in that case that "[n]o specific foundation has been presented for suspecting that the Board had been prejudiced by its investigation"). Meyer appears to contend that this aspect of *Withrow* was violated here because the Board "investigated the case through" the department and "prosecuted the case through [the Board's] own personnel" and because of other problems with the Board's final decision that we reject for reasons explained above.

17

¶42    This argument fails for at least the following reasons.  Meyer fails to factually support his assertion that there was any overlap in this case between relevant work of the Board's personnel and that of other department personnel who were in charge of pursuing a disciplinary complaint against Meyer.[6]  *See Pettit*, 171 Wis. 2d at 646-47.  Further, Meyer fails to come to grips with the fact that, under *Withrow*, any such overlap would not in itself create a due process problem.  What remains of Meyer's argument to show any form of "actual bias" consists of other contentions that we had already addressed and rejected above.

### E.  Substantial Evidence

¶43    Meyer asserts that the Board's decision cannot satisfy substantial evidence review.  *See supra* note 5 (citing WIS. STAT. § 227.57(6); *Hilton ex rel. Pages Homeowners' Ass'n v. DNR*, 2006 WI 84, ¶25, 293 Wis. 2d 1, 717 N.W.2d 166).  But this argument also fails because Meyer bases this argument entirely on other arguments that we have rejected, for reasons explained above.

## III.  Error of the Circuit Court

¶44    In its decision, the circuit court correctly identified the Minnesota conviction as a misdemeanor.  But at one point, the court mistakenly referred to the conviction as a felony.  Meyer argues that the court committed reversible error through the single felony reference.

---

[6] As reflected in the administrative record for this case, the complaint against Meyer for alleged unprofessional conduct was specifically pursued by a part of the department called the "Division of Legal Services and Compliance."

¶45 We agree with the Board that Meyer's argument on this topic fails because we review the decision of the Board, not that of the circuit court, *see Gordon*, 225 Wis. 2d at 556, and Meyer does not explain how the court's errant reference to his conviction renders any aspect of *the Board's* decision erroneous.[7]

¶46 Further, we simply observe for context that the circuit court did not in fact base its decision on the gravity of the offense underlying Meyer's conviction. Instead, the court made the mistaken reference in the course of describing the ALJ's determination that he was guilty of unprofessional conduct by failing to provide the Board with a criminal complaint and judgment of conviction related to the offense. Meyer's conclusory assertions to the contrary fail to address the words that the court used.

## CONCLUSION

¶47 For all of these reasons, we affirm the order of the circuit court that affirmed the Board's challenged decision.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[7] Meyer cites to case law that he asserts supports the proposition that this court should reverse in an administrative review case when *the circuit court's* affirmance of the underlying administrative decision "rests on a material factual mistake." However, none of the opinions cited by Meyer support this proposition, which is contrary to the settled principle that, in this type of case, we review the decision of the relevant agency, not the decision of the circuit court. *See Gordon v. Medical Examining Bd.*, 225 Wis. 2d 552, 556, 593 N.W.2d 481 (Ct. App. 1999).